1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

WALTER J. BARBEE,

                              Petitioner,

        v.

RON VAN BOENING,

                              Respondent.

No. C09-5667 RJB/KLS

**REPORT AND RECOMMENDATION**
**Noted for:  April 23, 2010**

        This case has been referred to United States Magistrate Judge Karen L. Strombom pursuant to Title 28 U.S.C. § 636 (b) (1) and Local MJR 3 and 4.    Petitioner Walter J. Barbee filed a 28 U.S.C. § 2254 habeas corpus petition related to his 2003 guilty plea to one count of Murder in the First Degree with firearm enhancement.  Dkt. 3.[1]  Respondent filed an Answer (Dkt. 12) and submitted relevant portions of the state court record.  Dkt. 13.

        Having carefully considered the parties' filings and the record relevant to the grounds raised in the petition, the undersigned recommends that Mr. Barbee's habeas petition be denied and this action dismissed.

---

[1] Mr. Barbee amended the front page of his petition only to name the proper respondent.  Dkt. 5.

REPORT AND RECOMMENDATION - 1

*STATEMENT OF THE CASE*

A.   *Basis of Custody*

Mr. Barbee is confined pursuant to the judgment and sentence of the Mason County Superior Court.   Mr. Barbee was found guilty by guilty plea to one count of Murder in the First Degree with firearm enhancement.  Dkt. 13, Exh. 1.  The trial court imposed a sentence of 304 months confinement, plus an additional 60 months based on the firearm enhancement, for a total sentence of 364 months confinement.  *Id.*, p. 6.

B.   *Factual Background*

The Washington Court of Appeals summarized the facts surrounding Mr. Barbee's conviction as follows:

> In May 2003, the State charged Barbee with first degree murder with a firearm enhancement, second degree murder with a firearm enhancement, first degree robbery with a firearm enhancement, unlawful possession of a controlled substance, and first degree conspiracy to commit robbery.
>
> The matter proceeded to a jury trial.  On May 27, 2003, before the end of his jury trial, Barbee entered a guilty plea to first degree murder with a firearm enhancement.[1]  Barbee also initialed this clause.
>
> Before accepting the plea, the trial court engaged in a colloquy with Barbee.  The trial court first confirmed that Barbee could read and write English, had completed the 12th grade of school, and that he had read the entire plea form with the assistance of counsel.  During the colloquy and pertinent to our analysis, the trial court also discussed the maximum sentence of life in prison, the standard range of 261-347 months, plus a 60-month firearm enhancement and the possibility of 24 to 48 months of community custody.  Barbee also acknowledged that no one had offered him anything other than that discussed with the court and in the agreement nor had anyone threatened him.
>
> Barbee then signed the written plea agreement containing the following clause: "The crime of murder [first degree] has a mandatory minimum sentence of at least 20 years of total confinement.  The law does not allow any reduction of this sentence."  Clerk's Papers (CP) at 37.

REPORT AND RECOMMENDATION - 2

The trial court entered Barbee's guilty plea and imposed a sentence of 304 months for the first degree murder charge and 60 months for the firearm enhancement, for a total of 364 months' confinement.[2]

At the June 12, 2003 sentencing hearing, the trial court explained to Barbee that the 60-month firearm enhancement portion of his sentence was not subject to any reduction for earned early release credit but that the 304-month first degree murder portion of his sentence was subject to a 15 percent reduction should he serve his time in a fashion warranting the reduction.

After serving some time at Washington Corrections Center in Shelton, Barbee transferred to the Clallam Bay Corrections Center.  In late 2004, a Clallam Bay prison counsel informed him of his earliest release date.  Barbee believed that the counselor was mistaken and that his release date was much earlier, and he tried unsuccessfully over the next year to contact his trial counsel regarding the matter.

Barbee then retained his current counsel, who advised him that because his murder conviction was subject to a mandatory minimum 20-year sentence, he was not eligible to earn early release credit on that portion of his sentence.

Barbee filed a PRP, notice of appeal, and motion to allow late filing of his appeal.  We denied his motion.  He filed a motion for discretionary review with our Supreme Court, which a Supreme Court commissioner denied.  He then filed a motion to modify the commissioner's ruling.  Department One of the Supreme Court granted his motion to modify and remanded to us for review.  We granted his motion to consolidate his direct appeal and PRP, and now address that consolidated appeal.[3]

[1][Court's footnote:]  In exchange for his plea, the State agreed in part to recommend the low end of the standard sentencing range and to dismiss the remaining counts against him.

[2] [Court's footnote:]  Barbee assigns no error to the portion of his sentence for the firearm enhancement.

[3][Court's footnote:]  We presume that, in modifying its commissioner's ruling, our Supreme Court directs us to grant Barbee's motion to allow late filing of his direct appeal and, thus, we review his late filed direct appeal. Because, in essence, we are treating his appeal as timely, we also address his PRP.

Dkt. 13, Exh. 14 (Unpublished Opinion, *State v. Barbee* and *In re Barbee,* Washington Court of Appeals Cause No. 34521-8-II consolidated with Cause No. 35644-9-II), pp. 1-3.

REPORT AND RECOMMENDATION - 3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

*C.      Statement of Procedural History*

Counsel for Mr. Barbee filed a notice of appeal of his Mason County Superior Court judgment and sentence.  Dkt. 13, Exh. 2.   Through counsel, Mr. Barbee filed a motion to permit late filing of his appeal.  *Id.*, Exh. 3.  In the same pleading, Mr. Barbee indicated that he would shortly be filing a personal restraint petition, and asked that that petition be consolidated with his direct appeal. See *id.*, p. 1, n.1.

On March 27, 2006, counsel for Mr. Barbee filed a personal restraint petition, also in the Washington Court of Appeals. *Id.*, Exh. 4.  Mr. Barbee's personal restraint petition also presented a motion to consolidate that petition with his direct appeal.  *Id.*, Exh. 4(a).  Mr. Barbee raised the following ground for relief:

> Mr. Barbee is entitled to his choice of remedy because he was misinformed about the penalties for the crime.

*Id.*, Exh. 4, p. 5.  Respondent State of Washington filed a response to Mr. Barbee's personal restraint petition and a brief in Mr. Barbee's direct appeal. *Id.*, Exh. 5.  Counsel for Mr. Barbee filed a reply brief.  *Id.*, Exh. 6.  The Washington Court of Appeals denied Mr. Barbee's motion to file a late appeal.  *Id.*, Exh. 7.   Mr. Barbee's motion to consolidate his personal restraint petition under Court of Appeals Cause No. 35644-9-II with his direct appeal under Court of Appeals Cause No. 34521-8-II was granted.  *Id.*, Exh. 12 and Exh. 4(a).

On May 5, 2006, counsel for Mr. Barbee filed a motion for discretionary review in the Washington Supreme Court, raising the following issues:

> 1)      Mr. Barbee wishes to challenge on appeal his guilty plea because he was misinformed about the penalties for the crime.  Has the State proved a knowing, voluntary, and intelligent waiver of the right to appeal when (a) Barbee was not informed in the trial court that he had a right to appeal or that there was a time limit for asserting that right and (b) Barbee believed

REPORT AND RECOMMENDATION - 4

until recently that the trial court had correctly informed him of the penalties?

2)   Mr. Barbee is entitled to his choice of remedy because he was misinformed about the penalties for the crime.

3)   In the alternative, Mr. Barbee is entitled to relief based on ineffective assistance of counsel.

*Id.*, Exh. 8, pp. 1, 8 and 12.

Respondent State of Washington did not file an answer to the motion for discretionary review.  On June 30, 2006, the Washington Supreme Court Commissioner issued a ruling denying review.  *Id.*, Exh. 9.  Counsel for Mr. Barbee then filed a motion to modify the Commissioner's ruling.  *Id.*, Exh. 10.  On October 10, 2006, the Chief Justice of the Washington Supreme Court issued an order granting Mr. Barbee's motion to modify the Commissioner's ruling, and remanded his case to the Washington Court of Appeals, Division II.  *Id.*, Exh. 11.

In his opening brief in the Washington Court of Appeals, counsel for Mr. Barbee raised the following issues:

1)   Have the federal due process clause and CrR 4.2(d) been violated when a defendant is not advised about a total prohibition on earned early release credit for a significant portion of his sentence?

2)   Is a defendant deprived of effective assistance of counsel under the Sixth Amendment when his attorney incorrectly advised him that he will receive earned early release credit on his entire sentence, and he would not have plead guilty had he known the truth?

3)   Is the defendant entitled to his choice of remedy for the above violations: specific performance or withdrawal of his plea?

*Id.*, Exh. 13, p. 1.  On March 18, 2008, the Washington Court of Appeals issued an unpublished opinion in which it affirmed Mr. Barbee's superior court judgment and sentence and denied his personal restraint petition. *Id.*, Exh. 14.

REPORT AND RECOMMENDATION - 5

Counsel for Mr. Barbee then filed a motion for discretionary review in the Washington

Supreme Court, raising the following issues:

> When Mr. Barbee pleaded guilty to murder in the first degree, his lawyer assured
> him that he would receive earned early release credit [court's footnote omitted] on
> his entire sentence (except for the firearm enhancement).  In fact, a statute
> prohibits any release credit on the first 20 years of the sentence.

> 1)    Was Barbee's Fourteenth Amendment right to due process violated
>       because he pleaded guilty without a full understanding of the
>       consequences of the plea?

> 2)    Was Barbee denied his Sixth Amendment right to effective assistance of
>       counsel because his lawyer misinformed him of the sentencing
>       consequences of the plea?

> Subsidiary issues raised by the Court of Appeals decision in this case include:

> 1)    Does a clause stating that a 20-year minimum sentence is "mandatory"
>       and that the law permits no "reduction" clearly advise a defendant that he
>       cannot earn good-time credit during the first 20 years of his sentence, even
>       if the resulting term of confinement is greater than 20 years?

> 2)    Assuming that such a clause provides sufficient warning, does it create a
>       conclusive presumption that the defendant understood the sentencing
>       consequences, or may the defendant present evidence that he, his lawyer,
>       the judge and the prosecutor all suffered from the same misunderstanding?

> 3)    Does a defendant necessarily receive effective assistance of counsel
>       during the plea process whenever a defendant pleads to reduced charges?

*Id.*, Exh. 15, pp. 1-2.  On November 7, 2008, the Chief Justice for the Washington Supreme

Court issued an order denying Mr. Barbee's petition for review. *Id.*, Exh. 16.  On December 2,

2008, the Washington Court of Appeals issued a mandate.  *Id.*, Exh. 17.

*CLAIMS FOR RELIEF*

Mr. Barbee presents the following claims for relief in his federal habeas petition:

> 1)    My 14th Amendment right to due process was violated because I plead guilty
>       without understanding the consequences of the law.

REPORT AND RECOMMENDATION - 6

2)      Ineffective assistance of counsel.  My lawyer misinformed me of the sentencing
        consequences of the plea.

Dkt. 3, pp. 5-6 (CM/ECF page numbering).

*EXHAUSTION OF REMEDIES*

Respondent concedes that Mr. Barbee has properly exhausted his available state

remedies.  Dkt. 12, p. 7.

*EVIDENTIARY HEARING*

The decision to hold a hearing is committed to the court's discretion.  *Williams v.
Woodford*, 306 F.3d 665, 688 (9th Cir. 2002).    State court findings are presumptively correct in

federal habeas corpus proceedings, placing the burden squarely on the petitioner to rebut the

presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  In deciding whether to

grant an evidentiary hearing, a federal court must consider whether such a hearing could enable

an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant

to federal habeas relief.  *Schriro v. Landrigan*, 550 U.S. 465, 468 (2007).  Because the

deferential standards prescribed by § 2254 of the Antiterrorism and Effective Death Penalty Act

(AEDPA) control whether to grant habeas relief, a federal court must taken into account those

standards in deciding whether an evidentiary hearing is appropriate.  *Id.*

An evidentiary hearing is not required where the petition raises solely questions of law or

where the issues may be resolved on the basis of the state court record.  *Totten v. Merkle*, 137

F.3d 1172, 1176 (9th Cir. 1998).  The petitioner must demonstrate that an evidentiary hearing

would materially advance his claims and explain why the record before the court, or an expanded

record, is inadequate for review.  *Totten*, 137 F.3d at 1176-77; see also Rule 8 of the Rules

Governing  2254 Cases.  It is not the duty of the state court to ensure that the petitioner develops

REPORT AND RECOMMENDATION - 7

the factual record supporting a claim. *Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004) (citing *McKenzie v. McCormick*, 27 F.3d 1415, 1419 (9th Cir. 1994)); see also *Baja v. DuCharme*, 187 F.3d 1075, 1079 (9th Cir. 1999); *In re Rice*, 118 Wash.2d 876, 884, 828 P.2d 1086, cert. denied, 506 U.S. 958 (1992).

The court has completed its review of the petition and found that the claims presented by Petitioner may be resolved solely by reference to the state court record and an evidentiary hearing is not needed.

*STANDARD OF REVIEW*

Federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension. *Engle v. Isaac*, 456 U.S. 107 (1983). Pursuant to the federal habeas statute for state convictions, a federal court may entertain an application for writ of habeas corpus "only on the ground that [the petitioner] is in custody in violation of the constitution or law or treaties of the United States." § 2254(a)(1995). The Supreme Court has repeatedly held that federal habeas corpus relief does not lie for errors of state law. *Estelle v. McGuire*, 502 U.S. 62 (1991); *Lewis v. Jeffers*, 497 U.S. 764 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

In a habeas corpus petition, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) establishes the district court's standard of review of the state court's decision. *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005). Under AEDPA, a federal court cannot grant a writ of habeas corpus to a state prisoner with respect to any claim adjudicated on the merits in state court unless the state court's adjudication of the claim:

> (1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

REPORT AND RECOMMENDATION - 8

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA standard of review "demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

Under 28 U.S.C. § 2254(d)(1), a state court decision is "contrary to" the Supreme Court's "clearly established precedent if the state court applies a rule that contradicts the governing law set forth" in the Supreme Court's cases. *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams*, 529 U.S. at 405-06). A state court decision also is contrary to the Supreme Court's clearly established precedent "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, "and nevertheless arrives at a result different from" that precedent. *Id.*

A state court decision can involve an "unreasonable application" of the Supreme Court's clearly established precedent in the following two ways: (1) the state court "identifies the correct governing legal rule" from the Supreme Court's cases, "but unreasonably applies it to the facts" of the petitioner's case; or (2) the state court "unreasonably extends a legal principle" from the Supreme Court's precedent "to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. However, "[t]he 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous." *Lockyer*, 538 U.S. at 75. That is, "[t]he state court's application of clearly established law must be objectively unreasonable." *Id.*

Under 28 U.S.C. § 2254(d)(2), a federal petition for writ of *habeas corpus* also may be granted "if a material factual finding of the state court reflects 'an unreasonable determination of

REPORT AND RECOMMENDATION - 9

the facts in light of the evidence presented in the State court proceeding.'" *Juan H. v. Allen*, 408 F.3d 1262, 1270 n.8 (9th Cir. 2005) (9th Cir. 2005) (quoting 28 U.S.C. § 2254(d)(2)).  As noted above, however, "[a] determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

*DISCUSSION*

A.      *Claim One – Guilty Plea*

        In this claim, Mr. Barbee argues that his Fourteenth Amendment right to due process was violated because he pled guilty without understanding the consequences of the law.  Dkt. 3, p. 5.  Mr. Barbee contends that he was told by his attorney that he would receive 15% good time on his entire sentence, and that during his sentencing hearing the judge and the prosecutor both agreed and stated that this is what would occur.  *Id.*

        "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 [1970]).  The inquiry in a habeas corpus proceeding does not focus on whether the defendant made a legal miscalculation, but whether the underlying plea was intelligent and voluntary.  *United States v. Broce*, 488 U.S. 563, 569-72 (1989); *Brady v. United States*, 397 U.S. 742, 755 (1970).  Because a guilty plea is more than "an admission of past conduct; it is the defendant's consent that judgment of conviction may be entered without a trial," a petitioner who enters a guilty plea cannot challenge the validity of the plea on the basis of innocence or the fact that the petitioner miscalculated the strength of the State's case.  *Broce*, 488 U.S. at 569-72; *Brady*, 397 U.S. at 748 and 756-57.  Thus, if the record shows the

REPORT AND RECOMMENDATION - 10

defendant was "fully aware of the direct consequences" of the guilty plea, and the defendant made a knowing and voluntary waiver of his constitutional rights, the guilty plea cannot be collaterally attacked in a habeas corpus proceeding. *Boykin v. Alabama*, 395 U.S. 238, 243 (1969); *Brady v. United States*, 397 U.S. 742, 749 (1970).

The Court must presume counsel explained the sentencing consequences as part of the plea discussions. *Henderson v. Morgan*, 426 U.S. 637, 647 (1976). The contemporaneous record of the guilty plea hearing also carries a "strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *United States v. Mims*, 928 F.2d 310, 313 (9th Cir. 1991). The defendant's contemporaneous statements that he understood the consequences of the plea are "accorded great weight" and "carry a strong presumption of verity." *United States v. Anderson*, 993 F.2d 1435, 1438 (9th Cir. 1993) (quoting *Chizen v. Hunter*, 809 F.2d 560, 562 [9th Cir. 1986]); see also *United States v. Sutton*, 794 F.2d 1415, 1422 (9th Cir. 1986). The petitioner must rebut all of these presumptions, and also overcome the presumption of lawfulness that attaches to final judgments. *Parke v. Raley*, 506 U.S. 20, 29-30 (1992).

Findings concerning a defendant's comprehension of the nature and consequences of his guilty plea, and findings concerning the historical facts underlying the issue of voluntariness are presumed correct in a habeas corpus proceeding unless the petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Marshall v. Lonberger*, 459 U.S. 422, 432-32 (1983); *Iaea v. Sunn*, 800 F.2d 861, 866 (9th Cir. 1986).

Mr. Barbee pled guilty to one count of First Degree Murder on May 27, 2003. Dkt. 13, Exh. 22. The following discussion occurred during Mr. Barbee's guilty plea colloquy:

MR. QUILLIAN: Your Honor, as Mr. Burleson indicated, it's Mr. Barbee's intention at this time to enter a plea of guilty to Murder in the First Degree with a firearm enhancement. I've reviewed the Statement of Defendant on Plea of

REPORT AND RECOMMENDATION - 11

Guilty with him. He has reviewed it and read it himself. I'm confident he understands the nature and consequences of the plea.

THE COURT: Thank you. Your name is Walter Jesse Barbee?

MR. BARBEE: Yeah.

THE COURT: How old are you?

MR. BARBEE: 25.

THE COURT: Walter, you've completed the 12th grade, is that correct?

MR. BARBEE: Yes.

THE COURT: You read and write the English language?

MR. BARBEE: Yeah, perfectly.

THE COURT: I've been handed a Statement of Defendant on Plea of Guilty. You're represented by Mr. Quillian. Have you had an opportunity to read this form in its entirety with the assistance of your attorney?

MR. BARBEE: Yeah, thoroughly.

*Id.*, Exh. 22, pp. 1329-1330.

It was not until Mr. Barbee's sentencing hearing on June 12, 2003, that the following

occurred regarding good time credit:

Mr. Barbee, you're a young man. As was pointed out by the Abundiz's, you will come out and have a life again. Mid-range sentence, I believe, is appropriate in your case. I'm imposing 304 months on the Murder First, plus an additional 60 months, for a total of 364 months. And if you want to do the math, that's 30.33 years.

Now counsel, I believe that good time on a murder is 10%, it is or is it 5?

MR. QUILLIAN: It's 15.

MR. BURLESON: I thought it was 15.

THE COURT: 15, okay.

REPORT AND RECOMMENDATION - 12

MR. BURLESON: On the murder.

THE COURT: On the murder. And no good time on the 60 months.

MR. BURLESON: Firearm.

THE COURT: So the 5 years is just done straight time. And then the 304 months, assuming that Mr. Barbee does his time in a fashion that allows him good time, will result in the 304 less 15%, so that the family understands what's going on. I don't want you to be shocked to realize that he gets out faster than that.

*Id.*, Exh. 23, pp. 1370-1371.

RCW 9.94A.540(1)(a) states that for offenders convicted of the crime of first degree murder, such offenders shall be sentenced to a term of total confinement of not less than 20 years. See *id*. During such minimum term of total confinement, no offender subject to the provisions of this statute is eligible for community custody, earned released time, furlough, home detention, partial confinement, work group, work release, or any other form of early release authorized under RCW 9.94A.728. See *id*. Consequently, when the trial court sentenced Mr. Barbee to 304 months confinement for first degree murder, he was not eligible to receive any earned release time for the first 240 months of that sentence. See *id*.

At Mr. Barbee's sentencing hearing, the trial court informed Mr. Barbee that he was not eligible for good time reduction on his 60 month firearm enhancement, but did not inform Mr. Barbee that the 304 month portion of his sentence for first degree murder was not eligible for earned release time reduction until after he had already served 240 months, or 20 years, of his sentence. Dkt. 13, Exh. 23, pp. 1370-1371.

Prior to the sentencing hearing, Mr. Barbee signed a Statement of Defendant on Plea of Guilty, which stated in part:

The crime of Murder 1° has a mandatory minimum sentence of at least 20 years of total confinement. **The law does not allow any reduction of this sentence.**

REPORT AND RECOMMENDATION - 13

This mandatory minimum sentence is not the same as the mandatory sentence of life imprisonment without the possibility of parole described in paragraph 6 [m].

. . .

My lawyer has explained to me, and we have fully discussed, all of the above paragraphs and the "Offender Registration" Attachment, if applicable.  I understand them all.  I have been given a copy of this "Statement of Defendant on the Plea of Guilty."  I have no further questions to ask the judge.

Dkt. 13, Exh. 18, p. 5, ¶ x (emphasis added); p. 7, ¶ 12.  Mr. Barbee and his attorney, Robert Quillian, signed the Statement of Defendant.  *Id.*, p. 7.   Mr. Quillian read and discussed the statement with Mr. Barbee and believed that Mr. Barbee was competent and fully understood the statement.  *Id.*  Additionally, the trial court noted that Mr. Barbee previously read the entire plea statement and that he understood it in full.  *Id.*  The trial court made the following finding of fact:

I find the Defendant's plea of guilty to be knowingly, intelligently and voluntarily made. Defendant understands the charges and the consequences of the plea. There is a factual basis for the plea. The Defendant is guilty as charged.

*Id.*

The Washington Court of Appeals rejected Mr. Barbee's claim that his guilty plea was not knowing, intelligent and voluntary:

Here, Barbee pleaded guilty to one count of first degree murder.  Under RCW 9.94A.540, the trial court must sentence an offender convicted of first degree murder to a minimum term of not less than 20 years and, during this term, the offender is not eligible to earn early release time.  RCW 9.94A.540(1)(a), (2). The trial court sentenced Barbee to 304 months for first degree murder, thus he was not eligible to receive "good time" credit on the first 240 months of that sentence.

We agree that, at his sentencing hearing, the trial court failed to properly inform Barbee of the sentencing consequences and misapprehended that the 304-month portion of his sentence for the first degree murder was subject to earned early release credit when, in fact, he was not eligible for this reduction until after serving 20 years.[5]

REPORT AND RECOMMENDATION - 14

But on May 27, 2003, and before the June 12, 2003 sentencing hearing, Barbee signed a written plea agreement. The trial court engaged in a colloquy that set forth the possible sentencing ramifications. During that colloquy and before accepting the plea, the trial court correctly advised Barbee about the sentencing consequences, and the agreement entered correctly stated that first degree murder carries a mandatory minimum sentence of 20 years of total confinement and that the law did not allow "any reduction of this sentence." CP at 37. The agreement also stated that Barbee's counsel had "explained" and "fully disclosed" all paragraphs contained in the agreement, and that Barbee understood all paragraphs. CP at 39.

The valid, signed plea agreement is direct and controlling evidence that Barbee understood the consequences of his plea at the time he entered into it. See *In re Pers. Restraint of Breedlove*, 138 Wn.2d 298, 310, 979 P.2d 417 (1999) (Valid plea agreement are regarded and interpreted as contracts binding parties by the terms and, where "intelligently and voluntarily made, with an understanding of the consequences, are accepted, encouraged and enforced in Washington.") *State v. McRae*, 96 Wn.App. 298, 303, 979 P.2d 911 (1999) (a plea agreement is an enforceable and binding contract between the defendant and the State). The trial court's misinformation imparted later at the June 12, 2003 sentencing hearing, although erroneous, does not vitiate the plea agreement itself. Rather, Barbee's written acknowledgment that he correctly understood the consequences of the valid plea agreement is binding on him.

Likewise, Barbee's sentence was based on the valid plea agreement and was not erroneous.[6]

[5] [Court's footnote:] At the sentencing hearing, the trial court stated the following: "So the 5 years is just done straight time. And then the 304 months, assuming that Mr. Barbee does his time in a fashion that allows him good time, will result in the 304 less 15%, so that the family understands what's going on. I don't want you to be shocked to realize that he gets out faster than that." Report of Proceedings (RP) at 1371. It also stated that "no good time" was available on the 60-month firearm enhancement, but it failed to advise that the same was true for the first 20 years of the first degree murder sentence. RP at 1371.

[6] [Court's footnote:] The written, signed judgment and sentence contains no information as to how "good time" credit would be applied to Barbee's sentence.

Dkt. 13, Exh. 14, pp. 5-7.

The Washington Supreme Court Commissioner addressed Mr. Barbee's first claim during the early stages of his direct appeal, but did not adjudicate the issue on the merits because the issue before the Commissioner at that time was whether the Washington Court of

REPORT AND RECOMMENDATION - 15

Appeals erred when denying Mr. Barbee's motion to file a late notice of appeal.  Dkt. 13, Exhs. 7 and 9.  Although the Commissioner did not adjudicate the merits of Mr. Barbee's first claim in Exhibit 9, the Commissioner's comments and analysis of the factual basis of Mr. Barbee's first claim is useful:

> The record here shows that the written plea statement, which Mr. Barbee read and claimed to understand, informed him that his murder conviction carried a "mandatory minimum" prison term of 20 years for which the law did not permit "any reduction."  He was also told that his firearm enhancement was mandatory. Mr. Barbee claims no misunderstanding about the mandatory nature of his firearm enhancement, but now claims that he failed to understand that the 20-year mandatory term for the murder could not be reduced by good conduct credits. But the record reveals no such misunderstanding prior to or at the taking of Mr. Barbee's plea.  The superior court did later remark at sentencing, with defense counsel's assent, that the prison term for the murder conviction was subject to reduction for good conduct, but the court appears to have directed its remarks to the victim's family, explaining why Mr. Barbee might not be imprisoned for the entire time imposed.  Without more, this remark does not establish that Mr. Barbee was unaware when he pleaded guilty that he would serve no less than 20 years for the murder conviction.  The affidavits Mr. Barbee presents address matters outside the record and therefore are not cognizable on direct appeal.

Dkt. 13, Exh. 9, pp. 3-4.

Federal law is not to the contrary.  "It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508-09, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984).  To determine voluntariness, the Court examines the totality of the circumstances. *Iaea v. Sunn*, 800 F.2d 861, 866 (9th Cir.1986).  A plea is voluntary if it "represents a voluntary and intelligent choice among alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).  "[A] plea of guilty entered by one fully aware of the direct consequences ... must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including

REPORT AND RECOMMENDATION - 16

unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)." *Brady v. United States*, 397 U.S. 742, 755, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).  In sum, "a guilty plea is void if it was 'induced by promises or threats which deprive it of the character of a voluntary act." *Sanchez v. United States*, 50 F.3d 1448, 1454 (9th Cir.1995) (quoting *Machibroda v. United States*, 368 U.S. 487, 493, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962)).

Here, Mr. Barbee acknowledged that he was fully aware of the direct consequence of his plea statement.  At the time of the plea, Mr. Barbee's counsel confirmed that he had reviewed the plea statement with Mr. Barbee and that he was confident that Mr. Barbee understood the nature and consequences of his plea.  Mr. Barbee confirmed that he had read his plea statement thoroughly with the assistance of his attorney.  Thus, under *Brady*, Mr. Barbee's plea was voluntary and intelligent.  See, also *Rodriguez v. Ricketts*, 798 F.2d 1250, 1254 (9th Cir.1986); *Fontaine v. United States*, 526 F.2d 514, 516 (6th Cir.1975) (there is no requirement that a court, in conducting a plea colloquy, bring to a defendant's attention every last right that is being waived.  See also *United States v. Nunez*, 223 F.3d 956, 958 (9th Cir.2000) and *United States v. Jeronimo*, 398 F.3d 1149, 1153 (9th Cir.2005) (a court looks to, and enforces the plan language of a plea agreement contract; an agreement's plain language will generally be enforced if it is clear and unambiguous on its face).

Mr. Barbee contends that he plead guilty without "understanding the consequences of the law."  According to Mr. Barbee he was told by his attorney and the judge, at the time of sentencing, that he would "get 15%" on his entire sentence.  Dkt. 3, p. 5.  However, the plea agreement itself clearly states that the crime to which he was pleading has a mandatory minimum sentence of at least 20 years for which no reduction would be allowed.  Dkt. 13, Exh.

REPORT AND RECOMMENDATION - 17

18, p. 5, ¶ [x].   It is undeniable that the written plea agreement contained Mr. Barbee's actual

sentence exposure.  In addition, Mr. Barbee does not claim that he did not know of the nature

of the charge to which he was pleading and further, stated during the plea colloquy that he

understood he was pleading guilty to first degree murder, a charge that carried a mandatory

minimum term of not less than 20 years.   Mr. Barbee admits that he "thoroughly" read his plea

statement with the assistance of his attorney.  Dkt. 13, Exh. 22, p. 1330.  Any misstatement by

the judge or the plaintiff's attorney at the later sentencing hearing does not support the

conclusion that the plaintiff did not know the consequences of his plea at the time he entered

into his plea before the judge.  Thus, the trial court's finding of fact that Mr. Barbee understood

the consequences of his guilty plea remains presumptively correct.  See 28 U.S.C. § 2254(e)(1)

(trial court's finding of fact is entitled to the presumption of correctness and that presumption

continues unless it is rebutted by clear and convincing evidence by the habeas petitioner).

        The undersigned finds that the decision of the Washington Court of Appeals (see Dkt.

13, Exh. 14), was not contrary to, or an unreasonable application of, clearly established

Supreme Court precedent, nor was its determination of the facts was objectively unreasonable,

in light of the evidence that was presented during Mr. Barbee's  state court proceeding. See 28

U.S.C. § 2254(d)(1) and (d)(2).   It is, therefore, recommended that Mr. Barbee's first claim for

federal habeas relief be denied.

*B.     Claim Two – Ineffective Assistance of Counsel*

        In his second claim for federal habeas relief, Mr. Barbee contends that his attorney

provided ineffective assistance when he informed Mr. Barbee of the sentencing consequences

of his guilty plea.  Dkt. 3, p. 6.

REPORT AND RECOMMENDATION - 18

To support a claim of ineffective assistance of counsel, a petitioner must satisfy a two-part standard.  First, the petitioner must show that counsel's performance was so deficient that it "fell below an objective standard of reasonableness."  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  This burden is highly demanding, as the defendant must prove he was denied a fair trial by the gross incompetence of counsel.  *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).  Second, the petitioner must show that the deficient performance prejudiced the defense so "as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Strickland*, 466 U.S. at 687.  Unless the defendant's showing satisfies both parts of the analysis, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable."  *Id*.  Because the petitioner must satisfy both prongs of the *Strickland* test, a court need not address both prongs if the petitioner makes an insufficient showing of one prong.  *Id*. at 697.  Judicial review of an attorney's performance is "highly deferential and doubly deferential when it is conducted through the lens of federal habeas."  *Yarborough v. Gentry*, 124 S. Ct. 1, 4 (Oct. 20, 2003).

Under the first prong of the *Strickland* test, the question is whether counsel's assistance was reasonable under the totality of the circumstances, viewed as of the time of counsel's conduct.  *Strickland*, 466 U.S. at 690. To succeed under the first prong, the petitioner must show the attorney's conduct "reflect[s] a failure to exercise the skill, judgment, or diligence of a reasonably competent attorney."  *United States v. Vincent*, 758 F.2d 379, 381 (9th Cir.), cert. denied, 474 U.S. 838 (1985).   There is a strong presumption that counsel's performance fell within the wide range of reasonable assistance.  *Strickland*, 466 U.S. at 689.

"The presumption impacts on the burden of proof and continues throughout the case, not dropping out just because some conflicting evidence is introduced."  *Chandler v. United*

REPORT AND RECOMMENDATION - 19

*States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000).  "An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption."  *Id*.  "Therefore, where the record is incomplete or unclear about [counsel's] actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment."  *Id*. (quoting *Waters v. Thomas*, 46 F.3d 1506, 1516 (11th Cir. 1995) (en banc)).  The presumption of competence, like the "presumption of innocence" in a criminal trial, continues throughout the habeas proceedings.  *Chandler*, 218 F.3d at 1314 n.15.  The petitioner continually bears the burden of persuasion on the issue of competence.  *Id*.  "Never does the government acquire the burden to show competence, even when some evidence to the contrary might be offered by the petitioner."  *Id*.

Under the second prong, the "defendant must show the deficient performance prejudiced the defense."  *Strickland*, 466 U.S. at 687.  It is not enough that counsel's errors had "some conceivable effect on the outcome."  *Id*. at 693.  The defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different."  *Id*. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*.

In the context of counsel's advice to plead guilty, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  This test does not focus on the defendant's subjective contention, but instead employs an objective standard.  *Id*. at 59-60; *Sanchez v. United States*, 50 F.3d 1448, 1454 (9th Cir. 1995).  For example, the alleged failure to pursue exculpatory evidence is not prejudicial in the case of a guilty plea if it

REPORT AND RECOMMENDATION - 20

would not have affected the outcome of a trial because a defendant under an objective standard

would not have insisted on going to trial.  *Hill*, 474 U.S. at 59-60; *Sanchez*, 50 F.3d at 1454.

In rejecting Mr. Barbee's ineffective assistance of counsel claim, the Washington Court of

Appeals stated:

> In support of his claim, Barbee submits his and defense counsel's
> declarations.  Barbee states that had he known he would not receive 15 percent good
> time credit, he would not have entered the plea.  Trial counsel states that he could not
> recall what he told Barbee about good time credit before the plea hearing but that he
> would not tell Barbee one thing before the hearing and another at the hearing.  Trial
> counsel also stated that he did not recall telling Barbee that he would be prohibited
> from earning credit on the first 20 years of his murder sentence.
>
> Barbee's claim fails because he cannot establish that defense counsel's
> performance was not objectively reasonable.  In exchange for Barbee's guilty plea,
> the state dismissed four felony counts, reducing the possible sentencing range from
> 312 to 418 months to 261 to 347 months.  **Regardless of whether Barbee was
> advised that he could receive 15 percent good time off his sentence, neither he
> nor counsel knew what sentence was going to be imposed at the time he entered
> his plea**. The only thing known for sure was that Barbee would be subject to a shorter
> sentence if he pleaded guilty than if he went to trial and was found guilty on all
> charges.  Any good time credit would simply have shortened that sentence even
> further; Barbee could not know by what exact amount since he had not yet received
> the sentence.  And if he had gone to trial and been convicted, he would have received
> a minimum sentence of 312 months which, even assuming he served the full time on
> his 304-month sentence, is eight months longer than he was sentenced to under the
> plea agreement.  This is a cost-benefit analysis that any defendant engages in with
> defense counsel when deciding whether to plead guilty without knowing whether or
> what he may ultimately be sentenced to.
>
> We also find no merit to Barbee's ineffective assistance of counsel claim
> because the signed plea agreement is valid, correctly states the law, and is controlling
> evidence that his counsel fully explained the agreement.

Dkt. 12, Exh. 14, pp. 7-8 (emphasis added).

Respondent notes that Mr. Barbee was charged with five different crimes in the State's

Fourth Amended Information.  Dkt. 12, Exh. 19.  The Fourth Amended Information charged

Mr. Barbee with the following crimes:

1.      Murder in the First Degree (with Firearm Enhancement);

REPORT AND RECOMMENDATION - 21

2.      Murder in the Second Degree (charged in the alternative as to Count 1) (with Firearm Enhancement);

3.      Robbery in the First Degree (with Firearm Enhancement);

4.      Unlawful Possession of a Controlled Substance; and

5.      Conspiracy to Commit Robbery in the First Degree.

*Id.*, p. 1.  The guilty plea colloquy reflects that the State moved to dismiss Counts 2-5 in exchange for Mr. Barbee's guilty plea of first degree murder.  *Id.*, Exh. 22, pp. 1336–37.  Therefore, and as was correctly noted by the Washington Court of Appeals, the State dismissed four felony counts which reduced Mr. Barbee's possible sentencing range from 312 to 418 months to the lesser range of 261 to 347 months in exchange for Mr. Barbee's guilty plea.  *Id.*, Exh. 14, p. 8.

Moreover, as the Washington Court Appeals reasonably determined, regardless of whether Mr. Barbee was advised that he could receive 15% good time off his first degree murder sentence, neither he nor his attorney *knew what sentence was going to be imposed at the time he entered into his plea*.  Dkt. 13, Exh. 14, p. 8 (emphasis added).

Mr. Barbee fails to demonstrate that he would have chosen to go to trial, rather than pleading guilty, based on his attorney allegedly misinforming him about the sentencing consequences of his plea.  The record is clear that had he proceeded to trial, he risked conviction on other felonies which carried significant, additional confinement time.[2]

Essentially, Mr. Barbee is claiming that he would not have pleaded guilty had he known he would have to serve an "additional" three years in confinement.  (261 month minimum, less

---

[2] As noted by Respondent, if Mr. Barbee had been convicted of murder in the first degree as well as just one additional crime, Count III, for example, which also carried a firearm enhancement, he faced sentencing ranges of 281-374 months if convicted of first degree murder, and 51-68 months if he was also convicted on Count 3, Robbery in the First Degree – plus an additional 60 months for the firearm enhancement on Count III.  Dkt. 13, Exh. 1, p. 2, ¶ 2.3 Sentencing Data (two prior convictions resulted in an offender score of 2).  If Mr. Barbee had been convicted of First Degree Murder and First Degree Robbery under Count 3, his offender score would have been 4, resulting in the sentencing ranges above. *See* Dkt. 13, Exhs. 20 and 21.

REPORT AND RECOMMENDATION - 22

1   15% good time (39.15 months), plus 60 month firearm enhancement).  However, Mr. Barbee's

2   standard range for his first degree murder conviction was 261- 347 months.  Dkt. 13, Exh. 1, p.

3   2.  Therefore, Mr. Barbee knew that by pleading guilty he would receive at least 261 months

4   confinement, the low end of the range, plus an additional 60 months for the firearm

5   enhancement, or he could have received a sentence at the high end of the range, 347 months, plus

6   an additional 60 months for the enhancement.

7       To satisfy the second prong of *Strickland,* Mr. Barbee must show that there was a

8   reasonable probability that he would have proceeded to trial but for his attorney's alleged failure

9   in misinforming him of the sentencing consequences in his case.  The only thing known for sure

10  was that Barbee would be subject to a shorter sentence if he pleaded guilty than if he went to trial

11  and was found guilty on all charges.  Dkt. 12, Exh. 14, p. 8.  In considering this aspect of Mr.

12  Barbee's claim, the Washington Court of Appeals stated that this is "a cost-benefit analysis that

13  any defendant engages in with defense counsel when deciding whether to plead guilty without

14  knowing whether or what he may ultimately be sentenced to."  Dkt. 13, Exh. 14, p. 8.  While

15  there is no guarantee that Mr. Barbee would have been convicted of the other counts if he had

16  proceeded to trial, he risked being sentenced to far more than what he terms as an "additional"

17  three years of confinement.

18      Mr. Barbee fails to show that the Washington Court of Appeals' decision in his case was

19  an objectively unreasonable application of *Strickland v. Washington*, or was an objectively

20  unreasonable determination of the facts in light of the evidence presented during his State court

21  proceeding.  *See* 28 U.S.C. § 2254(d)(1) and (d)(2).  Therefore, Mr. Barbee is not entitled to

22  federal habeas relief regarding his second claim.

REPORT AND RECOMMENDATION - 23

Accordingly, the undersigned recommends that Mr. Barbee's petition be denied and his claims dismissed with prejudice.

## SUMMARY CONCLUSION

Based on the foregoing discussion, the undersigned recommends that Mr. Barbee's habeas petition should be **denied**, and this action **dismissed**.  No evidentiary hearing is required as the record conclusively shows that Petitioner is not entitled to relief.

## CERTIFICATE OF APPEALABILITY

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge.  A COA may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(3).  A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Based on a thorough review of the record and analysis of the law in this case, the undersigned concludes that Mr. Barbee is not entitled to a COA with respect to any of the claims asserted in his petition because he has not demonstrated that jurists of reason could disagree with the district court's resolution of his constitutional claims or could conclude the issues presented are adequate to deserve encouragement to proceed further.

## WRITTEN OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and

REPORT AND RECOMMENDATION - 24

Recommendation to file written objections.  See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985).

Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **April 23, 2010**, as noted in the caption.

DATED this 2<u>nd</u> day of April, 2010.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 25